UNITED STATES DISTRICT COURT
Northern District of Alabama
Office of the Clerk
1729 5th Avenue North, Room 140
Birmingham, AL 35203

2019 NOV -4 P 12:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

Jerry Trawick; et al
    Plaintiff

Case Number: 2:19-cv-1199-ACA

Jerry D. McCutchen, Sr.
    Defendant

## Response

This is a response to Petitioner's Opposition to Vacate Arbitration Award dated October 15, 2019 and is in addition to my Cross Motion to Vacate Award. This opposition is a surreptitious effort to accomplish an end run around the six-year limitation of Finra Rule 12206. By grouping six different individuals into this one claim, the petitioner's transactions fall outside the six year window with the exception of one small transaction by only one claimant that falls just inside the six year window. Grouping these six individuals together in their claim was an effort to obfuscate the facts of their claim as it related to Rule 12206 and begs the question about justice and fairness.

Another significant issue that has just been disclosed is the fact that the Arbitration Panel Chairman, Mr. Mark Myers, had a **significant, undisclosed conflict of interest** (See Attached Exhibit: Finra Dispute Resolution Arbitration).

Mr. Myers was employed by one of the experts during the middle of July of this year which was just before the Arbitration Panel's ruling on July 15, 2019. Mr. Myers was a strong chairman and the other two panelists appeared to follow his lead. I had an off-chance opportunity to question one of the panelists, Ms. Lita S. Menkin, on August 30, 2019 in Lake Oconee, Georgia regarding their neglecting Finra Rule 12206. Her response was simply, "I was not the Chairman." Evidently, Mr. Myers carried significant weight with the panel. Therefore, since the Chairman should have disclosed the conflict of interest and did not do so, he has the appearance of **bias.**

Consequently, based on all of the above facts in addition to those in my original Cross Motion to Vacate Award, I respectfully petition the Court to vacate the award. The claimants will then be free to make a claim with Finra and hopefully, the claimants and defendant will have an arbitration panel that has no conflict of interest and will abide by Finra rules.

Dated: November 1, 2019

Jerry D. McCutchen, Sr.

FINRA DISPUTE RESOLUTION
ARBITRATION

FILED

2019 NOV -4 P 12: 10

U.S. DISTRICT COURT
N.D. OF ALABAMA

In the Matter of the Arbitration Between:

Keith Pearson, and Sandra Green & Rhonda Adams,

    Claimants,

v.

Berthel Fisher & Company Financial Services, Inc., Jerry D. McCutchen, Sr., Thomas Berthel, Ronald Brendengen, and Richard Murphy,

    Respondents.

FINRA Arbitration No. 17-01367

**RESPONDENTS' JOINT MOTION TO RECUSE OR REMOVE ARBITRATOR MYERS**

Respondents Berthel Fisher & Company Financial Services, Inc. ("Berthel Fisher"), Thomas Berthel ("Berthel"), Ronald Brendengen ("Brendengen"), Richard Murphy ("Murphy") and Jerry McCutchen ("McCutchen") (collectively "Respondents") jointly submit this motion to recuse or remove Arbitrator Mark Myers pursuant to FINRA Rules 12406 and 12407 because of a recent disclosure of a serious conflict of interest that prevents him from participating in a fair, unbiased award.

## INTRODUCTION

On October 23, 2019, Arbitrator Myers disclosed a conflict of interest requiring his recusal or removal from this arbitration. Arbitrator Myers disclosed that he was recently compensated by Respondents' expert, Capital Forensics, for serving on the Panel of a mock arbitration. A copy of Arbitrator Myers' disclosure is attached hereto as Exhibit A.

Capital Forensics, however, has been disclosed by Berthel Fisher, Berthel, Brendengen, and Murphy as their expert witness in the case. One individual from Capital Forensics who was

actually involved in the mock arbitration, Bob Valker, will be offered as an expert to testify on behalf of Respondents at the hearing. This creates an unwaivable conflict of interest for Arbitrator Myers. Respondents had no knowledge that Arbitrator Myers had this relationship with Capital Forensics until October 23, 2019, and were not consulted by Capital Forensics or Arbitrator Myers until well after the mock arbitration was completed and Arbitrator Myers had been paid.

According to Capital Forensics, the discussions between Arbitrator Myers and Capital Forensics leading up to Arbitrator Myers' engagement by Capital Forensics began in "mid-July."[1] ***Capital Forensics paid Arbitrator Myers $2400*** for two days' work, and Arbitrator Myers' travel costs and hotel was paid for. Notably, Capital Forensics was unwilling to disclose more information about the mock arbitration ***because, they advise, Capital Forensics and Arbitrator Myers have entered into a confidentiality agreement with each other.***

Based on this recent disclosure, Arbitrator Myers cannot render an objective and impartial determination in the proceeding. Either Arbitrator Myers will be partial to Respondents and the very expert, Mr. Valker, whom recently compensated him. Or, Arbitrator Myers will go out of his way to avoid being seen as partial to Respondents and/or Mr. Valker, creating a bias in favor of Claimants. At a minimum, Arbitrator Myers' recent compensation from Respondents' expert creates the appearance of partiality or bias.

Pursuant to Rule 12406, Respondents ask that Arbitrator Myers acknowledge this conflict and recuse himself. If he refuses, Respondents ask the Director of FINRA Dispute Resolution to remove Arbitrator Myers pursuant to Rule 12407.

---

[1] Arbitrator Myers signed an award in a case involving the same respondents, most of the same lawyers, and in which Capital Forensics testified, on July 11, 2019. The award was issued to the Respondents on July 15. Respondents do not know whether discussions between Arbitrator Myers and Capital Forensics began before he executed that award or not.

## BACKGROUND

On June 26, 2019, Respondents' filed a joint witness list identifying Alex Mats from Capital Forensics as a potential witness for the hearing in this matter. The hearing started on July 14, 2019 and continued until July 16, 2019 when all parties jointly requested the hearing be adjourned. Since then, Mr. Mats left Capital Forensics and Mr. Valker is Respondents' expert witness expected to replace Mr. Mats when the hearing resumes.

On October 23, 2019, Arbitrator Myers disclosed for the first time that he had been retained by Capital Forensics for a September, 2019 mock arbitration. Respondents immediately began inquiry by discussions with Capital Forensics. Respondents have learned that Arbitrator Myers' disclosure is limited by a confidentiality agreement he signed with Capital Forensics. Arbitrator Myers did not disclose the amount of his compensation but Respondents have been told that he was paid $2,400 plus reimbursement of costs (flights, hotel stays, and meals) for the mock arbitration which took place in Florida in September 2019. Arbitrator Myers did not disclose the nature of the mock arbitration, what he told those present about his arbitration philosophy, or what he told those present about how he makes his decisions in arbitration.[2] Arbitrator Myers did not disclose the date when he was first contacted to start planning for this mock arbitration or negotiate his compensation. Capital Forensics says this took place in "mid-July."

## ARGUMENT

**I.    Arbitrator Myers should recuse himself under FINRA Rule 12406.**

Arbitrator Myers should recuse himself from this Panel. Under FINRA Rule 12405(a), arbitrators must disclose "any circumstances which might preclude the arbitrator from rendering

---

[2] Respondents understand that Arbitrator Myers did discuss those matters with those gathered, and possibly much more, at some point during the mock arbitration or after.

3

an objective and impartial determination in the proceeding, including ... (2) Any existing or past financial, business, professional, family, social, or other relationships or circumstances with any party, any party's representative, ***or anyone who the arbitrator is told may be a witness in the proceeding***, that are likely to affect impartiality ***or might reasonably create an appearance of partiality or bias...***" Arbitrators have a continuing duty at any stage of the proceeding under Rule 12405(b) to disclose interests, relationships, or circumstances that might preclude an arbitrator from rendering an objective and impartial determination.

Whether Arbitrator Myers, FINRA, or Claimants ***believe*** Arbitrator Myers can be objective and impartial is not the test. The test is whether the relationship ***might*** impact his judgment. Moreover, even if this minimal test is not met, Arbitrator Myer must recuse himself if the relationship might simply ***create an appearance of partiality or bias***. Clearly, both standards requiring recusal are met here.

Simply by making this disclosure, Arbitrator Myers acknowledges that compensation from Capital Forensics is likely to affect his impartiality or at least reasonably creates the appearance of partiality or bias. If not, he would not have disclosed it. For that reason alone, Arbitrator Meyers should recuse himself.

Pursuant to Rule 12406, "Any party may ask an arbitrator to recuse himself or herself from the panel for good cause. Requests for arbitrator recusal are decided by the arbitrator who is the subject of the request." Good cause exists here because Arbitrator Myers was recently compensated by Respondents' expert for a mock arbitration in September, 2019. As Arbitrator Myers implicitly acknowledged in making the disclosure, this recent financial relationship with Capital Forensics, creates at least the appearance of partiality or bias. In addition to weighing the evidence of Mr. Valker's testimony, Arbitrator Myers will also be tasked with ruling on objections during Mr. Valker's testimony as Chair of the Panel. Even if Arbitrator Myers

4

believes he can still hear testimony, rule on objections, and render an objective and impartial decision, he must avoid the appearance of partiality and recuse himself from the Panel.

**II.     If Arbitrator Myers refuses to recuse himself, the Director should remove him under FINRA Rule 12407.**

Respondents expect that Arbitrator Myers will do the right thing and recuse himself from this arbitration. If he refuses to do so, Respondents ask the Director of FINRA Dispute Resolution (as defined by Rule 12100) to remove Arbitrator Myers pursuant to Rule 12407. At this point, the parties do not know if Arbitrator Myers scheduled the mock arbitration or negotiated his compensation with Capital Forensics prior to the first hearing. Regardless, the Director should remove Arbitrator Myers if he does not recuse himself.

Rule 12407(b) states:

> After the first hearing session begins, the Director may remove an arbitrator based only on information required to be disclosed under Rule 12405 that was not previously known by the parties. The Director may exercise this authority upon request of a party or on the Director's own initiative. Only the Director may exercise the authority under this paragraph (b).

The first hearing session began on July 14, 2019. Arbitrator Myers did not disclose his financial compensation from Capital Forensics until just last week, October 23, 2019. Respondents did not know about the relationship between Arbitrator Myers and Capital Forensics until October 23, 2019. Not only did Arbitrator Myers receive compensation from Capital Forensics, ***he also worked directly with Respondents' expert Mr. Valker in the mock arbitration***. To avoid the appearance of partiality or bias in favor of Respondents or Claimants based on this recently disclosed information, the Director should remove Arbitrator Myers.

## CONCLUSION

Based on his recent disclosure, Arbitrator Myers has a clear conflict of interest. In light of the circumstances, he should recuse himself. If he does not, the Director should remove him.

|  |  |
|---|---|
|  | **ANTHONY OSTLUND BAER & LOUWAGIE P.A.** |
| Dated: October 28, 2019 | By: *s/ Vincent D. Louwagie*<br>Vincent D. Louwagie<br>Cory D. Olson<br>Peter J. McElligott<br>3600 Wells Fargo Center<br>90 South Seventh Street<br>Minneapolis, MN 55402<br>Telephone: (612) 349-6969 |
|  | **ATTORNEYS FOR RESPONDENTS BERTHEL FISHER & COMPANY FINANCIAL SERVICES, INC.** |
|  | **LLOYD GRAY WHITEHEAD MONROE, P.C.** |
| Dated: October 28, 2019 | By: *s/ Mickey Wright*<br>Mickey Wright<br>880 Montclair Road, Suite 100<br>Birmingham, AL 35213<br>Telephone: (205) 967-8822 |
|  | **ATTORNEYS FOR RESPONDENT JERRY MCCUTCHEN** |
|  | **SIMMONS PERRINE MOYER BERGMAN PLC** |
| Dated: October 28, 2019 | By: *s/ Stephen J. Holtman*<br>Stephen J. Holtman<br>115 3rd Street SE<br>Suite 1200<br>Cedar Rapids, IA 52401-1266<br>Telephone: (319) 366-7641 |
|  | **ATTORNEYS FOR THOMAS BERTHEL, RONALD BRENDENDGEN, AND RICHARD MURPHY** |

6